144 So.2d 563 (1962)
Clyde BOURGEOIS, Jr.
v.
BEESON-WARNER INSURANCE AGENCY, INC.
No. 386.
Court of Appeal of Louisiana, Fourth Circuit.
September 4, 1962.
Graffagnino, Roberts & DeSonier, A. Russell Roberts, Louis DeSonier, Jr., Metairie, for defendant-appellant.
Harold L. Molaison, Robert I. Broussard, Gretna, for plaintiff-appellee.
Before AYRES, DAWKINS and HARWELL, JJ.
H. W. AYRES, Judge.
This is an action for damages wherein plaintiff seeks to hold defendant, a general insurance agency, liable to the extent of $2,500.00 in a loss sustained by burglary of his premises because of the alleged failure of the defendant to place burglary insurance in said amount on plaintiff's property in Jefferson Parish, Louisiana, in accordance with an alleged agreement entered into therefor.
To plaintiff's action, defendant, inasmuch as its domicile is in the Parish of Orleans, first filed and urged a plea to the jurisdiction of the court ratione personae. This plea was overruled, after which defendant *564 filed an answer denying, generally, the allegations of plaintiff's petition. After trial on the merits, there was judgment in plaintiff's favor as prayed for, from which defendant prosecutes an appeal.
The plea to the jurisdiction of the court has been reurged in oral argument on this appeal. The facts pertinent thereto may be first briefly stated. This action was instituted in Jefferson Parish under the provisions of Code of Practice Art. 165, Par. 9, which reads as follows:
"Trespass. In all cases where any person, firm or domestic or foreign corporation shall commit trespass, or do anything for which an action for damage lies or where any domestic or foreign corporation shall fail to do anything for which an action for damage lies, such person, firm or corporation may be sued in the parish where such damage is done or trespass committed or at the domicil of such person, firm or corporation." (Emphasis supplied.)
The property defendant was allegedly obligated to cover with burglary insurance is located in Jefferson Parish and it was therein where a burglary was allegedly committed upon said property by means of which plaintiff sustained damages in excess of the amount of the proposed insurance coverage.
The term "fail to do anything for which an action for damage lies" is broad in its meaning. Where plaintiff alleged that defendant failed to do an act for which an action for damage lies and that the damage was done and the loss sustained in Jefferson Parish, the provisions of the Code of Practice article, as hereinabove emphasized, conferred jurisdiction of the defendant, in this case, upon the district court in and for that parish. The provisions of the article are very explicit and unambiguous, as was pointed out in the dissenting opinion of the Chief Justice of the Louisiana Supreme Court in Tripani v. Meraux, 184 La. 66, 165 So. 453, 457. The strictest construction possible of the language of the article cannot change its meaning. See, also: White v. Lockhart, 229 La. 611, 86 So.2d 397; Gibbs v. Stanfill, La.App.2d Cir., 1957, 94 So.2d 582, 584. The plea to the jurisdiction is, therefore, in our opinion, untenable and was properly overruled
On the merits, only factual issues are involved. No question is presented as to the occurrence of the burglary nor as to the amount of the loss sustained therein. Only concerned is the question of whether defendant was obligated to place burglary insurance in the sum claimed on plaintiff's property and failed and neglected to do so. In an excellent opinion, the trial judge reviewed and analyzed the testimony and assigned written reasons for his conclusions, the correctness of which is, in our opinion, amply supported by the record. We therefore adopt and assign, as our own, his reasons for judgment wherein it was stated:
"According to the testimony of the plaintiff, on or about November 12, 1957, he met with Mr. John Warner of the defendant corporation, relative to the placing of burglary insurance on the sporting goods store which he operated in the Parish of Jefferson. After some discussion concerning the premiums, the plaintiff requested burglary insurance coverage of $2500.00 and was advised that the same was in effect. At this meeting, the defendant's representative inspected the premises in connection with the desired insurance.
"Approximately one (1) month later, the plaintiff's place of business was burglarized, and he sustained a loss of $5,125.32 * * *.
"The plaintiff testified that upon discovering the loss, he immediately contacted Mr. Warner and was instructed to forward a statement of the items stolen and their corresponding values and that he would receive payment within two (2) weeks. Thereafter, plaintiff repeatedly contacted Mr. Warner and other officials of the defendant *565 corporation, endeavoring to collect the proceeds of his policy. Some thirty (30) days after the burglary, plaintiff was advised by Mr. Warner that through oversight he had failed to place the insurance and, therefore, he had no coverage; however, that he would obtain payment from the insurance company because the agency had a large performance bond to place with the insurer, and he would obtain payment of the plaintiff's claim (apparently under the ex gratia payment practice prevailing between insurance companies and their general agents). The Court was impressed by this particular statement of the witness, since not being experienced in insurance matters, he would of necessity have received this information from someone, apparently Mr. Warner in this instance, familiar with the existing practices between insurance companies and general agents. This type of knowledge would be peculiar to an experienced insurance man and not the general layman. The testimony of the plaintiff was substantiated by his father, who was present at the time that Mr. Warner made the commitment concerning the insurance coverage of $2500.00, and, further, that he personally had contacted the defendant company for payment on behalf of his son.
"Mr. Warner, an agent of the defendant corporation, testified that he discussed this insurance with the plaintiff on or about November 12, 1957, but that no commitment or order for insurance was actually placed, no policy issued, nor any premiums paid. He admitted that he had inspected the plaintiff's premises but did not tell the plaintiff that he was covered by insurance since he would have been unable to do so as the insurer would require an inspection by the company engineers before issuing any policy of insurance. Although he repeatedly denied that he ever promised payment to the plaintiff, nonetheless he admitted that he exerted every effort to have the insurance company make an ex gratia payment of this claim. He advanced, as his reason for this action, his friendship with the plaintiff. The Court cannot help but feel that the effort expended by Mr. Warner was due solely and directly to the fact that he felt obligated to reimburse the plaintiff for his loss, up to the limits of $2500.00, because the plaintiff was led to believe, upon his representation, that he had insurance in this amount in effect. It was also for this reason that Mr. Warner felt it necessary to go into great detail in explaining to the plaintiff how he would obtain payment from the insurance company, even though no policy was in existence, by placing a large, desirable bond with it, such as the type resulting from highway contracts.
"Accordingly, it is the opinion of this Court that the defendant did represent to the plaintiff that he had in effect burglary insurance coverage of $2500.00, and that the actions of the defendant after the loss was sustained merely confirmed the fact that, although through their negligence they failed to process this coverage, nonetheless they felt obligated to obtain restitution or payment to the plaintiff. The mere fact of nondelivery of the policy and/or the payment of premium has no bearing on this matter, since the evidence adduced at the trial showed that there existed between the parties a very loose business relationshipin some instances, the defendant retained the policies, that the premiums were carried as an open account and were paid by the defendant upon the submission of a statement by the defendant. * * *"
For the reasons assigned, the judgment appealed is affirmed at defendant-appellant's cost.